IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

SHELBY COUNTY HEALTHCARE
CORPORATION, d/b/a REGIONAL
MEDICAL CENTER

    Plaintiff,

v.                                                No. 06-2549

THE MAJESTIC STAR CASINO, LLC
GROUP HEALTH BENEFIT PLAN,

    Defendant.
_____

ORDER GRANTING THE PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD,
DENYING THE DEFENDANT'S MOTION FOR JUDGMENT ON THE RECORD,
AND REVERSING THE DENIAL OF BENEFITS
_____

        The Plaintiff, Shelby County Health Care Corporation d/b/a Regional Medical Center ("the Med"), filed the instant action against The Majestic Star Casino, LLC Group Health Benefit Plan ("the Plan") pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), seeking review of the plan administrator's decision to deny coverage for medical services provided by the Plaintiff to Damon Weatherspoon, who was enrolled in the Plan through his employer, Fitzgerald Casino. Before the Court are the parties' cross-motions for judgment on the administrative record. (Doc. Nos. 10 & 11.) Both parties have responded and the motions are now ripe for disposition. For the reasons set forth below, the Plaintiff's motion is granted, while that of the Defendant is denied.

## BACKGROUND

        On March 13, 2005, Damon Weatherspoon was involved in a one-car accident on Highway 1 in Mississippi. (Doc. No. 8, Administrative R., at 0096.) The crash report indicated

that Weatherspoon was driving under the influence. (Id. at 0098.) It was also later revealed that Weatherspoon did not have a valid Mississippi driver's license. (Id. at 0091, 0083.)[1] Furthermore, he did not have auto insurance. (Id. at 0099, 0092.) Weatherspoon was transported to the Med, where he was treated until April 12, 2005, incurring a bill of over $400,000.00. (Doc. No. 12, Pl.'s Statement of Facts ¶ 2.) A letter from the Coahoma County Justice Court Clerk indicated that charges were brought against Weatherspoon for operating a vehicle without a driver's license and driving without proof of motor vehicle insurance, but that no charge was issued for driving under the influence because the results of a blood test administered at the site of the crash were still pending. (Doc. No. 8, Administrative R., at 0092.)

While Weatherspoon was a patient in the hospital, the administrator for the Plan was The Majestic Casino, LLC ("Majestic"). (Doc. No. 12, Pl.'s Statement of Facts ¶ 3.) As plan administrator, Majestic decided disputes pertaining to the rights of those covered by the Plan, reviewed claim denials, and administered the Plan according to its terms. (Id. ¶ 6.) In addition, Majestic had the right to appoint a claims administrator to perform claims processing. (Id. ¶¶ 6, 5.) The claims administrator appointed by Majestic, Benefit Administrative Systems, Ltd ("BAS"), "[was] not a fiduciary of the Plan and [did] not exercise any of the discretionary authority and responsibility granted to the Plan Administrator." (Id. ¶¶ 3-4 (quoting Doc. No. 8, Administrative R., Summary Plan Description, at 0629).) Instead, Majestic had the "sole discretionary authority to determine eligibility for Plan benefits or to construe the terms of the Plan." (Id. ¶ 5.)

---

[1] Weatherspoon did, however, have an identification card issued by the state of Mississippi. (Id. at 0091.)

2

According to the Summary Plan Description, the Plan did not cover any

> [c]harges for or in connection with an injury or illness arising out of the participation in, or in consequence of having participated in, a riot, insurrection or civil disturbance or being engaged in an illegal occupation or the commission or attempted commission of an illegal or criminal act.

(Doc. No. 8, Administrative R., at 0617.)[2] The term "illegal act" is not defined in the Plan. (Doc. No. 12, Pl.'s Statement of Facts ¶ 11.) BAS refused to pay the Med's first bill on the basis that the medical charges related to an illegal act by Weatherspoon. (Id. ¶ 10.).[3] Specifically, BAS's Subrogation Activity Report states that the "insured went off the road and hit a tree. He is uninsured, has no drivers license and was cited for driving under the influence all of which are illegal acts in the State of Mississippi." (Doc. No. 8, Administrative R., at 0213.)[4]

The Med requested an appeal of the claim denial on September 23, 2005. (Doc. No. 12, Pl.'s Statement of Facts ¶ 18.) Three days later, BAS manager, Dawn Evanchik emailed Sally Ramirez, the Corporate Director of Compensation & Benefits for Majestic, to alert her to the fact that Plaintiff was appealing the denial of benefits and let her know that she would be "reviewing

---

[2] The Plaintiff claims that this exclusion was not in effect when Weatherspoon received medical treatment at the Med. (Doc. No. 12, Pl.'s Statement of Facts ¶ 12.) However, the Record reveals that the relevant exclusion was present in identical form in the Summary Plan Descriptions that were in effect as of May 1, 2005 and January 1, 2004. (Compare Doc. No. 8, Administrative R. at 0527, and Doc. No. 9, Administrative R., at 0617.)

[3] The claim form submitted to BAS included an assignment of the payment of Weatherspoon's medical benefits to the Plaintiff. (Doc. No. 16, Def.'s Resp. to Pl.'s Statement of Facts ¶ 9.)

[4] According to the Plaintiff, Weatherspoon never received written notification of the fact that the claim was denied, as required by the Summary Plan Description. (Doc. No. 12, Pl.'s Statement of Facts ¶¶ 13-14.) The Defendant contends that no letter was needed, because Weatherspoon had assigned his rights to his medical benefits to the Med and there was some confusion as to whether Weatherspoon had already died. (Doc. No. 16, Def.'s Resp. to Pl.'s Statement of Facts ¶ 14.) The Med was notified of the denial of the claim. (Id.)

3

this case . . . and . . . contacting [her] to discuss further." (Doc. No. 8, Administrative R., at 0150.) The Defendant claims that it was Ramirez who ultimately instructed BAS to deny the Med's claim based upon the "illegal acts" that Weatherspoon engaged in, which led to his accident. (Doc. No. 16, Def.'s Resp. to Pl.'s Statement of Facts ¶ 19 (citing Aff. of Sally Ramirez ¶ 5).)

On October 24, 2005, BAS Compliance Manager Barbara Qualls mailed a letter to the Plaintiff's attorney, stating that the appeal had been referred to her "for review and response." (Doc. No. 8, Administrative R., at 0037.) Approximately one month later, Evanchik sent Sally Ramirez an email, attaching "the final letter we are sending" to the Med's attorney, and requesting that Ramirez "review and approve" it before it was sent out. (Id. at 0006.) There is no evidence that Ramirez made any changes to the letter. On November 21, 2005, BAS forwarded the final letter to the Plaintiff's attorney, asserting that it was "responding to [the Med's] appeal on behalf of the Plan Administrator" and that the letter reflected "the Plan Administrator's final decision." (Id. at 0003-04.)

The correspondence reiterated that coverage would be denied because of the illegal acts Weatherspoon allegedly engaged in the night of the accident. (Id. at 0003.) Specifically, the letter stated that Weatherspoon was cited for driving under the influence, but acknowledged that charges had not been brought on that conduct and that the results of the blood test were still pending. (Id.) The letter also observed that Weatherspoon did not have a Mississippi driver's license, although his employer's records revealed that he had lived in Mississippi since 1999. (Id. at 0004.) Last, it noted that Weatherspoon was uninsured. (Id.) The Plaintiff subsequently filed this action seeking to overturn the Defendant's denial.

4

ANALYSIS

The parties disagree on what standard of review should be applied and whether the Med's claim for benefits was correctly denied. The Court will consider these issues in turn.

A.  Standard of Review

A denial of health benefits is to be reviewed by federal courts under a de novo standard, unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Anderson v. Great West Life Assurance Co., 942 F.2d 392, 395 (6th Cir.1991) (citations omitted). Where an ERISA plan expressly affords discretion to a plan trustee to make benefits determinations, a court reviewing the plan administrator's actions applies an arbitrary and capricious standard of review. Id.[5] "When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision, however, this deferential review is not warranted" and de novo review is applied. Sanford v. Harvard Indus., Inc., 262 F.3d 590, 597 (6th Cir. 2001) (citations omitted) (upholding the district court's finding that the de novo standard was applicable when the defendant violated plan procedures by allowing an unauthorized body, a union grievance committee, to make a

---

[5] The arbitrary or capricious standard is a "highly deferential standard of review." Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996). It is the least demanding form of judicial review of administrative action. Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir. 2000). When reviewing a decision under this standard, a court must decide whether the plan administrator's determination was rational in light of the plan's provisions. Id. Stated differently, when it is possible to offer a reasoned explanation based on the evidence for a particular outcome, that outcome is not arbitrary and capricious. Id.; Raskin v. UNUM Provident Corp., No. 03-2270, 2005 WL 271939, at *2 (6th Cir. Feb. 3, 2005). The fact that a contrary conclusion *could* have been reached does not afford a basis to override the committee's decision. Whitehead v. Fed. Express Corp., 878 F. Supp. 1066, 1070 (W.D. Tenn. 1994).

benefits decision).[6] The plan administrator bears the burden of proving that the arbitrary and capricious standard applies. See Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002); Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 229-30 (2d Cir. 1995).

Here, Majestic, the plan administrator, is described by the Summary Plan Description as "the sole fiduciary of the Plan," who "exercises all discretionary authority and control over the administration of the Plan . . . ." (Doc. No. 9, Administrative R., at 0635.) Thus, the Defendant argues that the Court should review the denial of benefits under the arbitrary and capricious standard. (Doc. No. 13, Def.'s Mem. in Supp. Mot. for J. on Administrative R., at 5-6.) The Plaintiff counters that, because Majestic merely rubber-stamped BAS's decision to deny benefits, the Court should review the decision to deny benefits de novo. (Doc. No. 12, Pl.'s Mem. in Supp. Mot. for J. on Administrative R., at 9.) It is undisputed that BAS, as the claims administrator, is not a fiduciary of the Plan and does not have the discretionary authority to deny claims, but was merely hired "to perform claims processing." (Doc. No. 9, Administrative R., at 0635, 0629.)

The Sixth Circuit has not addressed the extent to which a plan administrator or fiduciary endowed with the discretionary authority to determine eligibility for benefits can delegate decision-making to a third-party administrator without foregoing deferential review of decisions to deny benefits. A survey of cases from other Circuits supports the conclusion that a third-party administrator must be granted discretionary authority in order for its decisions to be subject to the

---

[6] "When a court reviews a decision *de novo,* it simply decides whether or not it agrees with the decision under review." Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990). Its evaluation of the administrator's interpretation of the plan and its factual findings are limited to the evidence in the administrative record. Id. at 966-67; see also Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 616 (6th Cir. 1998) (same).

6

arbitrary and capricious standard of review. See Madden v. ITT Long Term Disability Plan for Salaried Employees, 914 F.2d 1279, 1283-84 (9th Cir. 1990) (holding that the arbitrary and capricious standard was applicable when the plan gave discretionary authority to an administration committee, and the committee properly designated the claims administrator as an ERISA fiduciary); Culp, Inc. v. Cain, 414 F. Supp. 2d 1118, 1126-27 (M.D. Ala. 2006) (finding that de novo review applied to a third-party administrator's factual determinations and interpretations of an employee welfare benefit plan in a suit against a participant for reimbursement of health-care benefits from a tort settlement when there was no evidence that the plan administrator interpreted the plan provisions or made factual determinations and the summary description of the plan did not authorize the plan administrator to delegate its sole discretion to this entity); Anderson v. Unum Life Ins. Co. of Am., 414 F. Supp. 2d 1079, 1096-97 (M.D. Ala. 2006) (reviewing a third-party administrator's decision to deny benefits de novo because it did not "share the same discretionary authority as [the plan administrator] to determine eligibility for benefits under [the plan administrator]'s policies . . . ."); Shane v. Albertson's Inc. Employees' Disability, 381 F. Supp. 2d 1196, 1203 (C.D. Cal. 2005) ("Because the [benefit plan/medical review committee] was not expressly granted discretion, I find that the proper standard of review is *de novo*."); Lloyd v. Evangeline Health Care, Inc., No. 5:96CV4-V, 1999 WL 33117256, at *5 (W.D.N.C. Mar. 31, 1999) (holding that the broad authority granted to the plan administrator to manage and delegate vested the third-party administrator with the same or similar broad discretion); but see Leonhardt v. Holden Bus. Forms Co., 828 F. Supp. 657, 665 (D. Minn. 1993) (applying the arbitrary and capricious standard to a denial of benefits decision

by a claims administrator without addressing the question of whether it was granted discretion by the plan administrator or fiduciary).

The record reveals that Majestic was almost totally uninvolved in the decision to deny benefits to Weatherspoon. First, it appears that BAS initially denied the request for benefits without any input from Majestic. (Doc. No. 16, Def.'s Resp. to Pl.'s Statement of Facts ¶ 15.) Only after the Med requested an appeal of BAS's decision, was Sally Ramirez, the Corporate Director of Compensation & Benefits for Majestic, informed of the claim and the basis for its denial. (Id. ¶ 19.) A BAS representative eventually emailed Ramirez its draft of a letter rejecting the Med's appeal and requested that she "review and approve" it before it was sent out. (Id. ¶ 26.) Although the Defendant alleges that Ramirez had several phone conversations with BAS employee Dawn Evanchik during which the merits of the claim were discussed, it is unclear whether anyone from Majestic ever examined Weatherspoon's medical records, the crash report, or any other documents pertaining to this case, other than the correspondence drafted by BAS. (See Doc. No. 15, Aff. of Sally Ramirez ¶¶ 4-5.)

In light of this evidence, the Court concludes that Majestic has not carried its burden of proving that the arbitrary and capricious standard should be applied. Because BAS was *explicitly not* granted discretionary authority to determine eligibility for benefits and Majestic simply adopted its decision without engaging in any independent fact-finding, the Court will apply a de novo standard of review. See Culp, 414 F. Supp. 2d at 1126 (concluding that the court could not overlook the problem created by the delegation of administrative responsibilities to a non-fiduciary third-party administrator when the plan administrator adopted the third-party

administrator's determination, without any evidence that it interpreted the plan provisions itself or made its own factual determinations).

B.      Denial of Benefits

As stated above, the Plan did not cover any loss caused by "participation in . . . the commission or attempted commission of an illegal or criminal act." (Doc. No. 9, Administrative R., at 0617.)  In its motion for judgment on the record, the Med argued that "the term 'illegal act' as written in the Plan, undefined, and in the context given, can not be applied in a reasonable fashion." (Doc. No. 12, Pl.'s Mem. in Supp. Mot. for J. on Administrative R., at 15.)  As such, "medical benefits could reasonably be denied by the absurd happenstance of being bitten by your [own] unlicensed dog. The spectrum is far too broad . . . ." (Id.)  In addition, the Plaintiff insisted that it is entitled to judgment because there is no causal link between Weatherspoon's injuries and the illegal acts of which he is accused. (Id. at 16-18.)  In response, the Defendant asserted that the phrase "illegal act" has an unambiguous, common-sense meaning and that there is a clear causal link between Weatherspoon's illegal acts and the accident. (Doc. No. 15, Def.'s Resp. in Opp., at 9-15.)

   1.    "Illegal Act"

In a case involving a denial of benefits where the insured was injured while driving under the influence and the plan contained exclusionary language similar to that in the Summary Plan Description at issue in this case, the Seventh Circuit held that the phrase "illegal acts" was unambiguous. Tourdot v. Rockford Health Plans, Inc., 439 F.3d 351, 354 (7th Cir. 2006). According to the court, the term "plainly [referred] to acts that the legislature [had] deemed contrary to law." Id.; see also Vann v. Central Benefits Nat'l Life Ins. Co., No. 1:96CV155-D,

9

1997 WL 560955, at *4-5 (N.D. Miss. Aug. 25, 1997) (holding that the term "illegal conduct" unambiguously included both felonies and misdemeanors). The Plaintiff extensively analyzes Bekos v. Providence Health Plan, 334 F. Supp. 2d 1248, 1256 (D. Or. 2004), which held that the phrase "other illegal act" was ambiguous "with regard to the level of offense which will trigger the exclusion . . ." and "with regard to whether any third-party action is required to trigger the exclusion." However, in reaching that conclusion, the district court relied on Oregon state law, which is clearly inapplicable to this case. See id. at 1256, 1253 (citing Or. Health Scis. Univ. v. Physicians Ass'n of Clackamas County Health Plans, Inc., 864 P.2d 872 (1993) (holding that the term "illegal activity" in an insurance policy exclusion does not have a plain meaning)).

The Court adopts the well-reasoned Seventh Circuit approach and concludes that the term "illegal act" unambiguously includes any act contrary to law. The Plaintiff's concern that benefits might be denied for absurd reasons, such as minor infractions of the law that are not related to the injury, is best addressed under the causation prong.

2. Causal Link

The Plan clearly requires that the injury or illness for which coverage is sought "arises" from the "commission or attempted commission of an illegal or criminal act" in order for the exclusion to apply. (Doc. No. 9, Administrative R., at 0617.) BAS's final letter to the Med rejecting its appeal of the denial of benefits stated that its determination was based on the fact that Weatherspoon was uninsured, driving without a license, and driving under the influence at the time of the accident. (Doc. No. 8, Administrative R., at 0003.)

a. <u>Driver's License and Auto Insurance</u>

The Plaintiff argues Weatherspoon's lack of a driver's license and the fact that he was uninsured did not cause his injuries. (Doc. No. 12, Pl.'s Mem. in Supp. Mot. for J. on Administrative R., at 17.) In <u>Celardo v. GNY Auto. Dealers Health & Welfare Trust</u>, 318 F.3d 142, 147 (2d Cir. 2003), the Second Circuit noted that the insured, Anthony Celardo, had a "decent argument that his placing the dealer plates on the unregistered, uninsured, and uninspected Corvette did not directly cause his injuries . . . ." However, as Celardo also committed the "illegal act of crossing the solid, double-yellow line to pass another vehicle immediately before he crashed," the appellate court concluded that his causation argument failed. <u>Id.</u> The fact that the court reviewed the denial of benefits under the arbitrary and capricious standard, rather than de novo, as well contributed to its rejection of Celardo's causation argument. <u>See</u> <u>id.</u> ("The Trust supports its causation analysis by arguing that had Celardo not illegally placed the dealer plates on the Corvette, he would not have been able to drive the Corvette on that fateful day. Again, while this causal link is not overwhelming, the Trustees' reading of the policy language excluding injuries "resulting from . . . participation in . . . an illegal act" as barring recovery for Celardo's injuries is a *reasonable* interpretation of the Plan. That is sufficient for us.") (emphasis added). The Court agrees with the Second Circuit that the connection between what the Plaintiff terms "documentary violations" and the car crash is weak at best. Reviewing BAS's decision de novo, it concludes that the claims administrator's decision to deny benefits on the basis that the accident was caused by Weatherspoon's lack of car insurance or a driver's license was in violation of the terms of the Plan, given that these circumstances could not have brought about the accident.

b. Driving Under the Influence

The Seventh Circuit and at least one district court have held that health plans governed by ERISA that exclude coverage for injuries incurred as a result of an illegal act may deny benefits to beneficiaries who have auto accidents while under the influence of alcohol. Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust, 901 F.2d 1369, 1371-72 (7th Cir. 1990); Carter v. ENSCO Inc., 438 F. Supp. 2d 669, 675 (W.D. La. 2006); see also St. Louis Univ. v. Glass, 864 F. Supp. 110, 113 (E.D. Mo. 1994) (holding same where plan excluded coverage for felonies, rather than all illegal acts, and the insured admitted all facts that comprised the felony of aggravated DUI). Those cases differ from this case, however, because there was conclusive evidence that the beneficiary was actually driving under the influence. See Sisters, 901 F.3d at 1372 ("[The beneficiary] pleaded guilty to driving under the influence and was sentenced to probation plus 120 hours of public service."); Carter, 438 F. Supp. 2d at 672-73 (noting hospital records revealed that the insured's blood alcohol level was reported to be 135 on the morning of his car accident and that his liver enzymes were elevated due to the high blood alcohol level); Glass, 864 F. Supp. at 113 (noting that the beneficiary admitted to driving under the influence).

The *only* evidence in the administrative record that Weatherspoon was driving under the influence is the crash report. (Doc. No. 8, Administrative R., at 0096-99.) The officer who arrived at the scene suspected that he had been drinking, administered a blood test, and cited him for driving under the influence. (Id. at 0098.) However, BAS employee Suzanne Hield concluded that based on the medical record, "we can not determine whether [Weatherspoon] was intoxicated or on drugs." (Id. at 0015.) The Court concludes that a police officer's mere

12

suspicion that Weatherspoon was intoxicated at the time of the accident does not provide an adequate basis for the denial of benefits.

The Defendant cites several cases for the proposition that a beneficiary need not have been charged with or convicted of an illegal act in order for a plan to deny benefits on the basis that the illegal act was committed. (Doc. No. 13, Def.'s Mem. in Supp. Mot. for J. on Administrative R., at 10-12 (citing James v. La. Laborers Health & Welfare Fund, 29 F.3d 1029 (5th Cir. 1994); SGI/ARGIS Employee Benefit Trust v. The Can. Life Assurance Co. & Corp. Benefit Solution, Inc., 151 F. Supp. 2d 1044 (E.D. Ark. 2001) .) The Court does not dispute this principle but finds that there was far more evidence in those cases to support the decision to deny benefits. See e.g., James, 29 F.3d at 1031-32 (a plan refused to cover the beneficiary's injuries on the basis that he incurred them while committing felony battery; although the beneficiary was never charged, there were several witnesses to the fight); SGI/ARGIS Employee Benefit Trust, 151 F. Supp. 2d at 1045 (a stop-loss insurer denied benefits where the plaintiff had been drinking prior to being injured in a car accident; charges were never filed, but a blood test revealed that he was above the legal limit). Here, the crash report did not provide sufficient details that explained why the police officer even suspected that Weatherspoon had been drinking. (See Doc. No. 8, Administrative R., at 0096-99.) For example, there were no notations indicating that Weatherspoon smelled of alcohol or that there was evidence of alcohol use in the car. The officer may simply have been speculating on the involvement of alcohol, based on the fact that it was a single-car accident occurring in the early morning hours. (See id. at 0096.) Another explanation that could be as plausible under these circumstances was that Weatherspoon simply fell asleep at the wheel.

CONCLUSION

For the foregoing reasons, having reviewed the administrative record de novo, the Court concludes that there is an insufficient causal link between Weatherspoon's lack of a driver's license or car insurance and his March 13, 2005 car accident. Furthermore, there is insufficient evidence in the administrative record that Weatherspoon had been using alcohol or other intoxicants before the accident to support BAS's denial of benefits on the basis that such an illegal act caused his injuries. Thus, the Court reverses BAS's decision and concludes that the Plaintiff is entitled to benefits under the terms of the Plan.[7] The motion of the Plaintiff for judgment on the record is therefore GRANTED, while the motion of the Defendant is DENIED.

IT IS SO ORDERED this 20th day of March, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[7] The Med also argued that judgment should be entered in its favor because BAS breached the Plan documents during the benefit denial and appeal process. (Doc. No. 12, Pl.'s Mem. in Supp. Mot. for J. on Administrative R., at 18-19.) The Court need not address this issue, however, based on it ruling herein.